UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KODAK ALARIS HOLDINGS LIMITED,

          Plaintiff,

    v.

EASTMAN KODAK COMPANY,

          Defendant.

---

**ANSWER WITH
COUNTERCLAIMS**


Civil Action No.:
1:19-cv-11424-NRB

**DEFENDANT EASTMAN KODAK COMPANY'S
ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

Defendant Eastman Kodak Company ("Kodak"), by and through its undersigned counsel, answers the Complaint of Kodak Alaris Holdings Limited ("Plaintiff"), and asserts certain affirmative defenses and counterclaims, as follows:

1.     Kodak admits that plaintiff filed a Complaint seeking damages against Kodak for alleged breach of contract as alleged in paragraph 1 of the Complaint. Kodak denies the remaining allegations in paragraph 1.

## THE PARTIES

2.     Kodak denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2.

3.     Kodak admits the allegations in paragraph 3.

## JURISDICTION AND VENUE

4.      Kodak admits the allegations in paragraph 4.

5.      Kodak admits the allegations in paragraph 5.

6.      Kodak admits the allegations in paragraph 6.

7.      Kodak admits the allegations in paragraph 7.

## STATEMENT OF FACTS

8.      Kodak admits the allegations in paragraph 8 to the extent they relate to the execution of the SAPA on or about August 30, 2013 and that the SAPA amended the parties' original agreement entered April 26, 2013. Kodak respectfully directs the Court to the language of the SAPA, which sets forth the parties' respective rights and obligations and otherwise denies the remaining allegations in paragraph 8.

9.      Kodak admits that Schedule II to the SAPA contains financial targets for specific Measurement Periods and that the SAPA contains provisions related to reverse earn out payments but respectfully directs the Court to the language of the SAPA, which sets forth the parties' respective rights and obligations, and otherwise denies the remaining allegations in Paragraph 9.

10.     Kodak admits the allegations in paragraph 10 to the extent that Kodak made reverse earn out payments for Measurement Periods 2015, 2016 and 2017 but denies the remaining allegations therein.

11.     In response to paragraph 11, Kodak admits that it made a reverse earn out payment to plaintiff for Measurement Period 2017 and that plaintiff supplied financial documentation indicating that Cumulative Actual Adjusted EBITDA was less than Cumulative Target Adjusted EBITDA, but denies that the financial documents supplied by plaintiff in connection with that payment were adequate and denies that Sharon Underberg confirmed the adequacy of the financial

documentation. Kodak further admits that John O'Reilly corresponded with Sharon Underberg in April 2018, but denies knowledge or information sufficient to form a belief as to the exact dates of any such correspondence and respectfully directs the Court's attention to the contents of those documents which speak for themselves.  Kodak denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 11.

12.     Kodak admits that it has not made a reverse earn out payment for Measurement Period 2018 due to plaintiff's failure to comply with the SAPA, and denies the remaining allegations in paragraph 12.

13.     Kodak admits that on or about April 30, 2019, John O'Reilly sent a letter to Roger Byrd regarding the reverse earn out payment for Measurement Period 2018, demanding payment for that Period and attaching certain financial documents. Kodak further admits that on or about August 13, 2019, O'Reilly sent a subsequent letter regarding the reverse earn out payment for Measurement Period 2018 but denies the allegation that a reverse earn out payment was due. Kodak denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding the manner in which plaintiff allegedly audited its financials. With respect to the characterization of the correspondence dated April 30, 2019 and August 13, 2019, and any attachments thereto, Kodak respectfully directs the Court's attention to the contents of those documents which speak for themselves. Kodak denies any remaining allegations in paragraph 13.

14.     Kodak denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 with respect to the methodology utilized by plaintiff to create the documents and the consistency between the documents submitted in connection with the 2017 and 2018 Measurement Periods. Kodak admits that plaintiff submitted documents for the 2018 Measurement Period indicating that the Cumulative Actual Adjusted EBITDA was less than the

Cumulative Target Adjusted EBITDA, but denies that these documents met the requirements of the SAPA and respectfully directs the Court's attention to the contents of those documents which speak for themselves. Kodak denies the remaining allegations of paragraph 14.

15.    In response to paragraph 15, Kodak admits that it did not make a reverse earn out payment for Measurement Period 2018 but denies that it failed to fulfill a contractual obligation to pay plaintiff. Kodak admits that on or about October 10, 2019, Roger Byrd sent a letter to John O'Reilly acknowledging receipt of plaintiff's financial documents for Measurement Period 2018 and identifying a deficiency with those documents under the SAPA. Kodak further admits that O'Reilly responded by letter dated October 29, 2019 and that the quoted portion of that letter appearing in paragraph 15 is accurate. Kodak also admits that plaintiff demanded payment in a letter dated November 18, 2019 and that Kodak denied that demand in a letter dated November 25, 2019. Kodak respectfully directs the Court's attention to the contents of documents cited in paragraph 15, which documents speak for themselves. Kodak denies the remaining allegations in paragraph 15.

16.    Kodak admits that it has not made the reverse earn out payment for Measurement Period 2018 as alleged in paragraph 16, but denies the remaining allegations in paragraph 16.

## AS TO THE FIRST CAUSE OF ACTION

17.    In response to paragraph 17, Kodak incorporates its responses to paragraphs 1 through 16 above.

18.    Kodak denies the allegations in paragraph 18.

19.    In response to paragraph 19, Kodak admits that plaintiff has provided certain documentation for each Measurement Period, including Measurement Period 2018, but denies that

this documentation is adequate or meets the requirements under SAPA for Measurement Periods

2017 and 2018.

20. Kodak denies the allegations in paragraph 20.

21. Kodak denies the allegations in paragraph 21.

22. Kodak denies any other allegations not specifically addressed in paragraphs 1-21

above.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

23. Plaintiff's claims are barred by the doctrines of laches, waiver and/or estoppel.

### SECOND AFFIRMATIVE DEFENSE

24. Plaintiff's claims are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

25. Upon information and belief, plaintiff's damages, if any, were caused by its own

conduct.

### FOURTH AFFIRMATIVE DEFENSE

26. Upon information and belief, plaintiff's damages, if any, are barred in whole or in

part by its failure to mitigate damages.

### FIFTH AFFIRMATIVE DEFENSE

27. Plaintiff's claims are barred by its failure to perform under the SAPA.

28. Kodak expressly reserves the right to amend this answer to add additional

affirmative defenses identified through the course of discovery.

### AS AND FOR A FIRST COUNTERCLAIM
### (Breach of Contract)

29. Kodak incorporates its responses to paragraphs 1 through 28 above.

30.      Contemporaneous with the negotiation and execution of the SAPA, Kodak and Kodak Alaris' predecessor, KPP Holdco Limited, negotiated a Film and Materials Supply Agreement ("Film Agreement"), a Pilot Extrusion and Coating Service Agreement ("Pilot Agreement"), a Silver Halide Display Film Supply Agreement ("Display Film Agreement") and a Specialty Chemicals Supply Agreement ("Chemicals Agreement") (collectively the "Agreements"). The SAPA and the Agreements were novated to Kodak Alaris.

31.      The Film Agreement was executed on September 3, 2013.

32.      Pursuant to Paragraph 2.1 of the Film Agreement, the initial term expired on December 31, 2014. Paragraph 2.1 permitted the parties to thereafter extend the term of the Film Agreement by one-year increments.

33.      Through five separate written amendments, the parties agreed to extend the term of the Film Agreement each and every year from 2013 through December 31, 2020.

34.      The parties also executed the Pilot Agreement on September 3, 2013.

35.      Pursuant to Paragraph 8(a), the initial term of the Pilot Agreement expired on September 3, 2016. Paragraph 8(a) permitted the parties to thereafter extend the term of the Pilot Agreement by one year increments.

36.      Through three separate amendments, the parties agreed to extend the term of the Pilot Agreement each and every year through December 31, 2019.

37.      In addition to the Film and Pilot Agreements, the parties also executed the Display Film Agreement on September 3, 2013.

38.      Pursuant to Paragraph 2.1, the initial term of the Film Display Agreement expired on December 31, 2014. Paragraph 2.1 permitted the parties to thereafter extend the term of the Display Film Agreement by one year increments.

39.     Through six separate amendments, the parties agreed to extend the term of the Display Film Agreement each and every year through December 31, 2020.

40.     The Chemicals Agreement was also executed on September 3, 2013.

41.     Pursuant to Paragraph 2.1 of the Chemicals Agreement, the initial term expired on September 3, 2016. Paragraph 2.1 permitted the parties to thereafter extend the term of the Chemicals Agreement by one-year increments.

42.     By an amendment dated March 4, 2016, Kodak and Kodak Alaris agreed to extend the term of the Chemicals Agreement from September 3, 2016 through September 2, 2017.

43.     The parties amended the Chemicals Agreement a second time on August 24, 2018. The "Second Amendment" ratified an agreement between the parties to extend the term from September 2017 until August 24, 2018 and then through December 31, 2019.

44.     Under the Agreements, Kodak manufactured, sold and supplied various products and services to Kodak Alaris.

45.     The Film Agreement, Display Film Agreement and Chemicals Agreement required that Kodak Alaris submit purchase orders for each purchase it made from Kodak. Pursuant to the Pilot Agreement, Kodak Alaris was required to request Experimental Services by submitting a Purchaser Request Form.

46.     Upon receipt of a purchase order or Purchaser Request Form, Kodak would fulfill the request and invoice Kodak Alaris accordingly.

47.     Paragraph 6.3 of the Film Agreement, Display Film Agreement and the Chemicals Agreement and Paragraph 7 of the Pilot Agreement required Kodak Alaris to make all undisputed payments within 45 days of the invoice date. Failure to pay within 45 days would result in a penalty of 1% per month, calculated from the date on which the invoice first became due.

7

48.    Beginning in September 2013, Kodak Alaris began ordering products and services from Kodak pursuant to the Agreements.

49.    Despite the requirement to make all payments within 45 days of the invoice date, Kodak Alaris frequently paid invoices beyond the 45 day mark.

50.    These late payments began in September 2013 and have continued since.

51.    In a letter dated December 20, 2019, Kodak, through its General Counsel Roger Byrd, notified Kodak Alaris of the outstanding penalties incurred over the previous six years and attached an invoice dated December 18, 2019 for the unpaid amount.

52.    On January 24, 2020, Kodak Credit Analyst James Painter issued an invoice to Kodak Alaris dated January 23, 2020 for penalties on late payments incurred in December 2019 under the Film Agreement, Chemicals Agreement and Pilot Agreement.

53.    While Kodak did not previously seek to enforce Paragraph 6.3 of the Film Agreement, Display Film Agreement and Chemicals Agreement or Paragraph 7 of the Pilot Agreement, it did not affirmatively waive its rights to do so.

54.    Specifically, Paragraph 13.2 of the Film Agreement, Display Film Agreement and Chemicals Agreement, and Paragraph 15(b) of the Pilot Agreement contains the following provision which requires any waiver under the Agreements be in writing:

> No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by any party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege. No party shall be deemed to have waived any provision of this Agreement unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver. [Except as expressly provided herein,][1] This Agreement shall not be amended, altered or qualified except by an instrument in writing signed by each of the parties hereto.

---

[1] This language appears only in the Pilot Agreement.

8

55.    At no point did Kodak ever waive in writing (or otherwise) its right to enforce the penalty provision in the Agreements.

56.    As of the date of this Answer, Kodak Alaris has not responded to the December 20, 2019 letter nor paid the outstanding December 18, 2019 and January 23, 2020 invoices despite Kodak's demands.

57.    Kodak Alaris' failure to remit the penalties owed constitutes a breach of Paragraph 6.3 of the Film Agreement, Display Film Agreement, and the Chemicals Agreement and Paragraph 7 of the Pilot Agreement for which Kodak has suffered damages in an amount to be determined at trial but in no event less than $2,925,901.

## AS AND FOR A SECOND COUNTERCLAIM
### (Breach of Contract)

58.    Kodak incorporates its allegations contained in paragraphs 30 through 57 above.

59.    In addition to extending the term of the Chemicals Agreement, the Second Amendment also made substantive changes to the Chemicals Agreement. Specifically, paragraph 4 of the Second Amendment deleted and replaced paragraph 6.2(a) of the Chemicals Agreement.

60.    As amended, paragraph 6.2(a) required, in pertinent part, that Kodak Alaris purchase at least 90% of its annual volume of Fixed Price Products from Kodak or be subject to a penalty:

> Kodak Alaris must purchase a minimum of 90% of their annual volume of each of the Fixed Price Products from Kodak for the Term…If Kodak Alaris annual volume does not meet 90% of a Fixed Price Product threshold for the previous year, then a true-up charge of 0.5% for every 1.0% decrease in purchase will apply for that product.

61.    Exhibit A to the Second Amendment sets forth a list of products offered by Kodak, including Fixed Price Products, under the Chemicals Agreement.

62.    Pursuant to Exhibit A, Fixed Price Products included among others SPGE Latex Drums and SPGE Latex Totes (the "SPGE Products"), as well as BMEK77 Aqueous Solution 10KG and BMEK77 Aqueous Solution 180KG (the "BMEK Products").

63.    Kodak fulfilled its obligation to supply the materials set forth in 2019 Kodak Alaris purchase orders submitted pursuant to the Chemicals Agreement.

64.    In a letter dated February 19, 2020, Kodak Alaris informed Kodak of the "volume purchases by [Kodak] Alaris in 2019 of the chemicals marked as 'Fixed Price Products' on Exhibit A of the Second Amendment to the [Chemicals] Agreement."

65.    In that letter, Kodak Alaris reported that it purchased 118,597 kg of the SPGE Products in 2019.

66.    However, in 2019 Kodak Alaris purchased, directly or indirectly, just 33,009 kg of SPGE Products from Kodak pursuant to the Chemicals Agreement (less than 28% of Kodak Alaris' annual volume).

67.    Similarly, Kodak Alaris reported that it purchased 4,320 kg of BMEK Products in 2019.

68.    However, Kodak Alaris purchased, directly or indirectly, only 3,620 kg of BMEK Products from Kodak pursuant to the Chemicals Agreement (less than 84% of Alaris' annual volume).

69.    Kodak Alaris' purchases of SPGE Products and BMEK Products from Kodak in 2019 represent less than 90% of Kodak Alaris' 2019 volume of each of those Fixed Price Products.

70.    Kodak Alaris' failure to purchase at least 90% of its annual volume of Fixed Price Products, including SPGE & BMEK Products, constitutes a breach of the Chemicals Agreement as amended.

71.     Kodak has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Kodak respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.     A judgment dismissing plaintiff's Complaint in its entirety with prejudice;

B.     A judgment that plaintiff is not entitled to the relief prayed for in its Complaint, or to any relief whatsoever;

C.     A judgment granting Kodak's counterclaims in their entirety,

D.     An order awarding Kodak monetary damages on its counterclaims plus pre and post judgment interest;

E.     An order granting Kodak reasonable attorneys' fees and costs; and

F.     Any such other and further relief as the Court may deem just and proper.


Dated: February 20, 2020

 s/ Eric J. Ward

Eric J. Ward (eward@wardgreenberg.com)
Michael J. Adams (madams@wardgreenberg.com)
WARD GREENBERG HELLER & REIDY LLP
1800 Bausch & Lomb Place
Rochester, New York 14604
(585) 454-0700
*Attorneys for Eastman Kodak Company*
